IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **XEROX STATE & LOCAL SOLUTIONS, INC.**, <br><br> 8260 Willow Oaks Corporate Drive, <br> 6th Floor, Fairfax, Virginia 22031, <br><br> **Plaintiff**, <br><br> v. <br><br> **CITY OF CLEVELAND, OHIO**, <br><br> c/o Frank Jackson <br> Mayor of Cleveland <br> 601 Lakeside Ave. <br> Cleveland, Ohio 44114 <br><br> c/o Barbara A. Langhenry <br> Director of Law <br> 601 Lakeside Ave., Room 106 <br> Cleveland, Ohio 44114 <br><br> c/o Michael McGrath <br> Director of Public Safety <br> 601 Lakeside Ave., Rm 230 <br> Cleveland, Ohio 44114 <br><br> **Defendant**. | CASE NO:  1:15-cv-1707 <br><br> JUDGE <br><br> MAGISTRATE JUDGE |

## COMPLAINT

Plaintiff Xerox State & Local Solutions, Inc. ("Xerox") brings the following Complaint against Defendant City of Cleveland, Ohio, an Ohio Municipal Corporation, ("City" or "Cleveland").

## NATURE OF THE ACTION

1. This case arises from the City's failure to pay Xerox for traffic cameras and related services that Xerox provided to the City under the parties' contract. This contract does not expire until June 1, 2017, but the City ceased paying Xerox on November 4, 2014, only about a year-and-a-half into the contract's term. By doing so, the City breached its contract with Xerox, and is thus liable to Xerox for damages resulting from that breach.

## PARTIES

2. Plaintiff Xerox State & Local Solutions, Inc. is a New York corporation with its principle place of business located at 8260 Willow Oaks Corporate Drive, 6th Floor, Fairfax, Virginia 22031.

3. Defendant Cleveland is an Ohio municipal corporation.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over the City because it is an Ohio municipal corporation, and its breach of contract took place in Ohio.

6. Venue is proper because the City is located in this District, and a substantial part of the events giving rise to the claim occurred in this District.

## FACTS

7. Since 2004, Xerox has contracted with the City to provide traffic cameras and related services to support the City's Photo Safety Program.

## The City's Contractual Obligations

8. The parties' most recent contract titled "License and Services Agreement between Xerox State & Local Solutions, Inc. and The City of Cleveland, Ohio" (the "LSA") was effective June 1, 2013. A true and accurate copy of the LSA is attached as Exhibit A. The LSA runs for a four-year term, and thus does not expire until June 1, 2017. (LSA § 5.0.)

9. In exchange for Xerox providing and servicing the red-light and speeding cameras (including certain back-office processing), the LSA obligates the City to pay Xerox a fixed monthly fee.

10. Specifically, the LSA requires the City to pay Xerox as "set forth in Exhibit 1." (LSA § 4.0.) Exhibit 1, in turn, provides that "[t]he CITY shall pay monthly fees to CONTRACTOR as set forth in the table below." (LSA § E1.2.)

11. This table, copied below, provides specific monthly fees for the types of units that Xerox was required to provide the City under the LSA.

| Unit Type | Equipment Type | Monthly Fee Per Unit | Assumptions |
|---|---|---|---|
| Existing Red Light Enforcement Unit | Gatsometer | $3,075.00 | |
| Existing Speed on Green, Yellow and Red | Gatsometer | $1,425.00 | |
| Existing Fixed Speed Enforcement Unit | Gatsometer | $5,125.00 | |
| Existing Mobile Speed Enforcement Unit | Gatsometer | $5,300.00 | Mobile Speed Vehicles provided, stored, maintained and operated by the City. |
| New Red Light Enforcement Unit | DriveSafe Red Light | $3,075.00 | |
| New Speed on Green, Yellow and Red | DriveSafe Red Light | $1,425.00 | |
| New Fixed Speed Enforcement Unit | DriveSafe Speed | $5,125.00 | |
| PCU City Deployed | PoliScan on Trailer | Units 1-6: $6,995.00<br>Units 7-Up: $6,225.00 | City responsible for storage and delivery of Units to City selected deployment locations utilizing two Ford Escapes provided by Contractor. Contractor is responsible for set-up, daily calibration, power and event retrieval. 24x7 enforcement with Units generally rotated to new locations every two weeks. |
| School Bus Enforcement Unit | CrossSafe | 65% of each $200.00 citation paid | Pricing shall be predicated on a $200.00 school bus fine amount and the assumption that a maximum of 20 buses will be equipped with the CrossSafe™ technology, unless expansion is mutually agreed upon. |

12. For existing units, the fees "commence[d] as of the Effective Date and end as of the date the applicable existing Unit is replaced with a new unit

3

or decommissioned pursuant to Schedules A and B." (LSA § E1.2.) Schedules A and B detail the units that the City decided to have over the LSA's term. (*See also* LSA § 2.2 (describing Schedules A and B).)

13. Similarly, "[m]onthly fees for new Units shall commence when such Unit is installed, ready for enforcement and the City has given its final acceptance of the new Unit[.]" (LSA § E1.2.)

14. As of November 4, 2014, the City had four New Fixed Speed Enforcement Units, 44 New Red Light Enforcement Units, and 15 Portable Speed Enforcement Units ("PCU").

15. These units equate to a total monthly fee of $303,670.

16. Because the "focus of the Program . . . is to encourage drivers to reduce red light and speed violations," the "compensation to be paid to CONTRACTOR is not dependent upon violation rates[.]" (LSA § E1.1.)

17. But the LSA was still intended to be "revenue-neutral," and thus provided that "the CITY'S obligation for payment and the total compensation paid to CONTRACTOR over the course of [the LSA] shall not exceed the total amount of civil penalties received from violators." (LSA § E1.1.)

18. Section E1.1 achieves this goal by providing that the City is not required to pay the portion of a monthly fee that program revenues for that month are insufficient to cover (defined as a "Shortfall"). But "when Program Revenues in any given month exceed, or have exceeded in previous months, the monthly base fee payment for any month ("Surplus"), then such Surplus shall

4

be applied to any cumulative Shortfall due CONTRACTOR until all Shortfall amounts under this LSA are paid in full."

19. Thus, § E1.1 of the LSA operates as a "true-up" provision. Surpluses are used to pay shortfalls, and at the end of the term, the City may keep any accumulated surplus and similarly would not be liable if instead a shortfall existed.

20. The City has a surplus under the LSA in excess of $9 million.

21. In other words, the City's surplus is greater than the amount of monthly fees remaining over the LSA's term.

### The Ballot Initiative

22. The City placed an initiative regarding traffic camera use in the City on the November 4, 2014 ballot.

23. The initiative sought to amend Cleveland's Charter to include specific requirements regarding the use of traffic cameras in Cleveland.

24. After this initiative passed on November 4, 2014, the City instructed Xerox to "turn off" the cameras. Xerox complied with this directive.

25. The City is permitted to terminate the LSA "without cause and in its sole discretion at any time." (LSA § 6.1.3.) But to exercise that right, the City must pay Xerox a termination fee that is calculated according to a formula set forth in the LSA.

26. The City subsequently informed Xerox that it was not terminating the LSA pursuant to this provision yet intended not to pay Xerox any monthly

5

fees beyond November 4, 2014, the date on which the City unilaterally decided to stop using the traffic cameras.

27. The City also informed Xerox that it neither intended to use the cameras in the future nor objected to their removal. Thus, Xerox removed its equipment at the end of March 2015, *inter alia*, to prevent any deterioration and vandalism.

28. Once it became clear that the City had no intention of fulfilling its contractual obligations, Xerox sent the City a notice of default pursuant to § 6.1.1 of the LSA on April 2, 2015. A true and accurate copy of Xerox's notice to the City is attached as Exhibit B.

29. The City has not cured its default. Nor has it informed Xerox of a proposed plan to do so. Xerox, however, remains ready and willing to perform its obligations under the LSA.

## CLAIM FOR RELIEF

### Breach of Contract

30. Xerox incorporates by reference the preceding allegations as if fully set forth here.

31. The LSA between Xerox and the City is valid, enforceable, and supported by adequate consideration. *See generally* Exhibit A.

32. The LSA requires Xerox to provide traffic cameras and related services to the City in exchange for a monthly fee.

33. Xerox performed and stands ready and willing to perform all of its obligations under the LSA.

6

34. The City, however, unilaterally ceased paying Xerox the required monthly fee provided for in the LSA with 29 months remaining in the LSA's four-year term.

35. The City's failure to pay Xerox as the LSA requires is a breach of contract.

36. Xerox sustained damages resulting from the City's breach of contract in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Xerox respectfully prays that this Court:

A. Enter judgment in favor of Xerox on its breach of contract claim.

B. Award Xerox monetary damages resulting from the City's breach of contract in an amount to be determined at trial, pre- and post-judgment interest on those damages, all costs related to this action, and attorney's fees.

C. Award such further relief as this Court deems appropriate to compensate Xerox for the City's conduct.

Dated: August 25, 2015            Respectfully submitted,

                                                     /s/ *Terry Brennan*
                                                     Terry Brennan (0065568)
                                                     Chris Bator (0038550)
                                                     Sam A. Camardo (0089427)
                                                     Baker & Hostetler LLP
                                                     3200 PNC Center
                                                     1900 East Ninth Street
                                                     Cleveland, Ohio 44114-3485
                                                     Telephone: 216.621.0200
                                                     Facsimile: 216.696.0740
                                                     tbrennan@bakerlaw.com
                                                     cbator@bakerlaw.com
                                                     scamardo@bakerlaw.com

                                                     *Attorneys for Xerox State & Local Solutions, Inc.*