## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| XEROX STATE & LOCAL SOLUTIONS, INC., | ) | CASE NO: 1:15-CV-1707 |
| | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT CITY OF CLEVELAND'S MOTION FOR SUMMARY JUDGMENT ON ISSUE OF LIABILITY

---

TERRY BRENNAN (0065568)
CHRIS BATOR (0038550)
SAM A. CAMARDO (0089427)
Baker & Hostetler LLP
3200 PNC Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740
tbrennan@bakerlaw.com
cbator@bakerlaw.com
scamardo@bakerlaw.com

BARBARA LANGHENRY (0038838)
Director of Law
THOMAS J. KAISER (0014339)
Chief Trial Counsel
CONNOR P. NATHANSON (0085191)
Asst. Director of Law
JILLIAN L. DINEHART (0086993)
Asst. Director of Law
City of Cleveland
601 Lakeside Ave., Room 106
Cleveland, Ohio 44114-1077
Ph: (216) 664-2800
Fax: (216) 664-2663
cnathanson@city.cleveland.oh.us
jdinehart@city.cleveland.oh.us
tkaiser@city.cleveland.oh.us

Attorneys for Plaintiff
Xerox State & Local Solutions, Inc.

Attorneys for Defendant
City of Cleveland

# TABLE OF CONTENTS

**Page No.**

Table of Authorities ..................................................................................iii,iv

Memorandum in Support of Motion for Summary Judgment

    I. Statement of the Case ..................................................................3

    II. Statement of the Relevant Facts ...............................................3

    III. Law & Argument ...................................................................5

        A. Standard of Review ...........................................................5

        B. The Voter Initiated Charter Amendment is a Force Majeure Event
        that Excuses Nonperformance.............................................6

        C. City of Cleveland's Performance was Excused under the Doctrines of Impossibility,
        Impracticability, and Frustration of Purpose....................................9

        D. The City is Not Barred from Raising the Above Defenses.................12

        E. The Contracts Clause Does Not Preclude City of Cleveland's Defenses.................16

Conclusion .....................................................................................19

Certificate of Service .......................................................................20

## TABLE OF AUTHORITIES

**Cases**                          **Page No.**

*Abdow v. Atty. Gen.*, 468 Mass. 478, 492, 11 N.E.3d 574 (2014)............................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)............................5,6

*Billings v. Cleveland Ry. Co.*, 92 Ohio St. 478, 484, 111 N.E. 155 (1915)..................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)......................................5,6

*City of Middletown v. Ferguson*, 25 Ohio St.3d 71, 495 N.E.2d 380 (1986)..............17,18

*Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188,
    23 S.Ct. 1389 (2003)...............................................................15,16

*Davis v. Davis*, 18 Ohio Dec. 313 (1907)..............................................8,13

*Fuldauer v. City of Cleveland*, 30 Ohio App.2d 237, 238, 285 N.E.2d 80 (1972)..............8

*Glickman v. Coakley*, 22 Ohio App.3d 49, 52, 488 N.E.2d 906 (8th Dist. 1984)..............10

*Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)........................6

*Hamilton Co. Bd. Of Mental Retardation v. Professionals Guild*, 46 Ohio St.3d 147,
    545 N.E.2d 1260 (1989)..........................................................13,14

*Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989)........................................6

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).........................6

*LNB Bancorp, Inc. v. Osborne*, N.D. Ohio 1:09-CV-643, 2009 WL 936957 (April 3, 2009).....11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)..............6

*MTH Real Estate, L.L.C. v. Hotel Innovations*, 2nd Dist. Montgomery No. 21729,
    2007 WL 2821135 at ¶ 19 (Sept. 28, 2007)............................................9

*Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 149 (N.D. Ohio 1989)...........10

*Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).................6

*Stand Energy Corp. v. Cinergy Services, Inc.*, 144 Ohio App.3d 410, 416,
    760 N.E.2d 453 (2001)................................................................7

*State ex rel. Commt. For Charter Amendment Petition v. Maple Heights*, 140 Ohio St.3d 334, 18 N.E.3d 426, 2014-Ohio-4097……………………….........................................8,14,16

*State ex rel. Ebersole v. Powell*, 141 Ohio St.3d 17, 21 N.E.3d 274, 2014-Ohio 4283…………13

*State ex rel. Pecyk v. Greene*, 102 Ohio App. 297, 114 N.E.2d 922 (1953)……………………8

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)…………………………6

*United Automobile, Aerospace, Agricultural Implement Workers of America Int'l Union v. Fortuno*, 633 F.3d 37 (2011)……………………………………18

*United States v. Brooks–Callaway Co.*, 318 U.S. 120, 63 S.Ct. 474, 87 L.Ed. 653 (1943)………6

*U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25, 97 S.Ct. 1501 (1977)………………18

*West Haven Sound Development Corp. v. West Haven*, 201 Conn. 305, 313, 514 A.2d 734, 739 (1986)……………………………………………………...12,13,14,15

## Statutes

Federal Rules of Civil Procedure Rule 56……………………………………………………...1

Ohio State Constitution, Article XVIII, Section 9…………………………………………….4,8

City of Cleveland Charter § 33, § 49, § 54, and § 55…………………………………………….13

City of Cleveland Charter § 200………………………………………………………………….4,14

City of Cleveland Charter § 203………………………………………………………………….4,9,11

United States Constitution, Section 10, Article I………………………………………………...17

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| XEROX STATE & LOCAL SOLUTIONS,INC., | ) | CASE NO: 1:15-CV-1707 |
| | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT CITY OF CLEVELAND'S** |
| | ) | **MOTION FOR SUMMARY** |
| CITY OF CLEVELAND, | ) | **JUDGMENT ON ISSUE OF LIABILITY** |
| | ) | |
| Defendant. | ) | |

Defendant City of Cleveland respectfully requests that this Honorable Court enter summary judgment in its favor regarding the issue of liability in the above-captioned case, pursuant to Rule 56 of the Federal Rules of Civil Procedure. As explained more fully in the attached Memorandum in Support, there are no genuine issues as to any material fact. The record clearly shows that the materials facts in this case are not in dispute and only questions of law remain.

In this case, summary judgment on the issue of liability should be granted for City of Cleveland. Plaintiff's allegations of a breach of contract should fail because the voter driven ballot initiative, which eventually amended the City of Cleveland Charter, constitutes a Force Majeure Event as defined in the contract between the parties, hereafter referred to as the "contract" or the "LSA". The Charter Amendment's substantial restrictions on Cleveland's Automated Traffic Enforcement Program also excused the City's performance of the contract under the Doctrines of Impossibility, Impracticability, and Frustration of Purpose. Furthermore, Plaintiff has not pleaded and cannot prove that the voter-initiated Charter Amendment violated

the Contracts Clause of the United Constitution.  As such, the City is not liable for breach of contract.  Therefore, summary judgment should be granted for City of Cleveland regarding the issue of liability.

Respectfully submitted,

BARBARA LANGHENRY (0038838)
Director of Law

By: _____/s/ Connor Nathanson_____
THOMAS J. KAISER (0014339)
Chief Trial Counsel
CONNOR P. NATHANSON (0085191)
Asst. Director of Law
JILLIAN L. DINEHART (0086993)
Asst. Director of Law
City of Cleveland
601 Lakeside Ave., Room 106
Cleveland, Ohio 44114-1077
Ph: (216) 664-2800 \ Fax: (216) 664-2663
cnathanson@city.cleveland.oh.us
jdinehart@city.cleveland.oh.us
tkaiser@city.cleveland.oh.us

ATTORNEYS FOR DEFENDANT
CITY OF CLEVELAND

2

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    Statement of the Case

Plaintiff Xerox State & Local Solutions, Inc. ("Xerox") initiated this action on August 25, 2015 by filing its Complaint alleging one count of Breach of Contract against Defendant City of Cleveland.  Xerox filed an Amended Complaint on August 28, 2015, also alleging that the City breached its obligations by ceasing to pay Xerox "the required monthly fee provided for in the LSA with 29 months remaining in the LSA's four-year term."  ECF 4, Page ID# 64.  The City filed its Answer to the Amended Complaint on October 23, 2015, and filed an Amended Answer on November 6, 2015.  The City filed a Second Amended Answer January 15, 2016. ECF 17, Page ID# 222.

This matter is now before the court on City of Cleveland's Motion for Summary Judgment on the Issue of Liability.

### II.    Statement of the Relevant Facts

On June 27, 2013, City of Cleveland entered into a contract with Xerox See Contract, ECF 4-1, Page ID#68.  The City and Xerox had previously contracted to operate this program from 2005 to 2013, and the new contract was an expansion of that program.  Deposition of Larry Jones ("Jones Dep.") ECF 19, Page ID# 389-390, 25:6-26:3, April 21, 2016.  Pursuant to the new contract, Xerox installed automated traffic cameras at designated locations throughout the city. When those cameras detected traffic violations, Xerox would process and review the captured images to identify the violators.  Then, after review by the Division of Police, Xerox would mail the initial citation notices to the violators.   Where the initial notice went unanswered, Xerox would mail a second notice.  See Contract, ECF 4-1, Page ID#70-74; Also see Jones Dep., ECF 19, Page ID# 405, 41:1-20.

3

The goal of the Automated Traffic Photo Enforcement Program was to promote public safety by reducing the number of traffic accidents and injuries throughout the City of Cleveland. Flask Deposition ("Flask Dep."), ECF 18, Page ID# 275-277, 47:16-49:9, Apr. 8, 2016.  During the years the program was in operation, it was very effective in reducing the number of traffic accidents and injuries.  *Id.* at Page ID#270-272, 42:15-44:2.  The number of traffic violations, including speeding tickets and red light violations, processed by the automated cameras, greatly decreased from year to year due to the cameras' effect on drivers' behavior.  *Id.* Also see Jones Dep., ECF 19, Page ID# 393, 29:2-7.

On August 18, 2014, residents of City of Cleveland submitted a petition to the City's Clerk of Council.  See Petition and City Record, attached as Exhibit A.  The petition called for an amendment to the City of Cleveland Charter to limit the use of photo-monitoring devices to detect traffic violations.  *Id.*  Under the proposed Amendment, the City would only be allowed to use a photo-monitoring device for traffic enforcement if a law enforcement officer was present at the location of the device and personally issued the ticket to the alleged violator at the time and location of the violation.  *Id.*  Due to the requirements of the Ohio State Constitution and the Cleveland City Charter, the City Council had no choice but to submit the issue to the Board of Elections for placement on the November 2014 ballot for a city-wide vote by the electorate. City of Cleveland Charter § 200, attached as Exhibit B; Article XVIII, Section 9, of the Ohio Constitution.

Prior to the vote, both Xerox and the City were aligned and campaigned against the proposed Charter Amendment.  Mayor Jackson appeared in a television commercial and gave interviews to the media, where he spoke about the beneficial effects of the traffic camera program on driver safety.  Jones Dep., ECF 19, Page ID# 411, 47:5-8; and ID# 484-485, 120:12

4

– 121:14.  However, on November 4, 2014, a majority of Cleveland residents voted in favor of the Charter Amendment.  See City of Cleveland Charter § 203, attached as Exhibit B.     Under the requirements of the Charter, the Amendment immediately went into effect upon approval by the electors.  City of Cleveland Charter § 200, attached as Exhibit B.     As such, on the following day, Department of Public Safety Program Manager Larry Jones notified Jeffrey Townsend from Xerox that the traffic cameras must be turned off because of the passage of the Charter Amendment.  Jones Dep., ECF 19, Page ID# 437, 73:17-25.  On March 25, 2015, Xerox began the process of removing all of its traffic cameras placed throughout Cleveland.  See Letter from Larry Jones, attached as Exhibit D.

### III.    Law & Argument

Summary judgment on the issue of liability should be granted for City of Cleveland because the voter driven ballot initiative to amend the City of Cleveland Charter caused the City to be unable to perform under the contract.  The passage of the Charter Amendment, which occurred subsequent to entering into the contract, constitutes a Force Majeure Event and the City cannot be held liable.   The Charter Amendment's substantial restrictions on Cleveland's Automated Traffic Enforcement Program also excused the City's performance of the contract under the Doctrines of Impossibility, Impracticability, and Frustration of Purpose.  As such, the City is not liable for allegedly breaching its contract with Xerox.  Therefore, summary judgment should be granted for City of Cleveland regarding the Issue of Liability.

### A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed.R.Civ.P. 56; see also, *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts.  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied sub nom. *Superior Roll Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990).  Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-405.

## B.  The Voter Initiated Charter Amendment is a Force Majeure Event that Excuses Nonperformance

A force majeure clause in a contract defines the scope of unforeseeable events that may excuse nonperformance by a party.  *United States v. Brooks–Callaway Co.*, 318 U.S. 120, 63 S.Ct. 474, 87 L.Ed. 653 (1943).  To use a force majeure clause as an excuse for nonperformance,

6

the nonperforming party bears the burden of proving that the event was beyond the party's control and without its fault or negligence. *Stand Energy Corp. v. Cinergy Services, Inc.*, 144 Ohio App.3d 410, 416, 760 N.E.2d 453 (2001).   Force majeure is partially defined in the License and Service Agreement between the parties as "Acts of Government (…) or any other events or unforeseen circumstances beyond the reasonable control of the Contractor or the City." ECF 4, PageID#71.

In this case, the Charter Amendment that was initiated and adopted solely by the voters was an unforeseen event beyond the control of the City government.  First, the voter initiative to amend the City Charter was not foreseeable at the time the contract was made.  Martin Flask, who was Cleveland's Safety Director in 2013, entered into the contract on behalf of City of Cleveland.  ECF 4-1, Page ID#89.  He did not become aware that voters in Cleveland were attempting to petition for the Charter Amendment until Spring 2014, over a year after the contract was executed.  Flask Dep., ECF 18, Page ID# 297, 69:12-17.  Furthermore, there was a previous contract that had been in place with Xerox's predecessor that had gone unchallenged for several years.  Therefore there was no reason for the parties to foresee a successful challenge to this contract.  It was not until August 18, 2014 that residents submitted their petition and signatures to the Board of Elections for verification.  City Record, attached as Exhibit A.  There are no provisions in the contract or its amendment that discuss a charter amendment by voter initiative.  While the amendment to the contract included a termination provision should federal or state law prohibit the use of photo-enforcement traffic programs, it does not discuss the potential for a charter amendment with substantial restrictions.  As such, the potential for this Charter Amendment was not contemplated or foreseen by the parties at the time that contract was made.

Second, the passage of the Charter Amendment was beyond the control of the City.  The charter of a city is the organic law by which the people of a municipality are to be governed and which establishes how they will be governed.  *Fuldauer v. City of Cleveland*, 30 Ohio App.2d 237, 238, 285 N.E.2d 80 (1972).  A municipality governed by a charter is a "body politic and corporate of the inhabitants of a district created by authority of the government authorized to exercise specified powers of legislation and regulation with respect to local concerns." *Davis v. Davis*, 18 Ohio Dec. 313 (1907).  Under Cleveland's Charter, legislative and regulatory power is delegated by the electors to the city council and executive and administrative power is delegated by the electors to the Mayor and the Mayor's appointees. However, under the Charter, the electors reserve to themselves the power to change their municipal charter as they see fit.  *State ex rel. Pecyk v. Greene*, 102 Ohio App. 297, 114 N.E.2d 922 (1953).  When the electors change the charter, they are not acting as legislators.  It is the exercise of organic law.  *See Fuldauer*, 30 Ohio App.2d 237.  In other words, the City of Cleveland did not exercise its power as a governing body to adopt the Charter Amendment.

Here, the Cleveland City Council took no subjective or voluntary action to change Cleveland's Charter.  The Ohio Constitution is the direct source of authority for municipal charters. *Billings v. Cleveland Ry. Co.*, 92 Ohio St. 478, 484, 111 N.E. 155 (1915).  Under Article XVIII, Section 9, of the Ohio Constitution, a mandatory constitutional duty is imposed upon a city council to submit charter amendment initiatives forthwith to the electors of that city. *State ex rel. Commt. For Charter Amendment Petition v. Maple Heights*, 140 Ohio St.3d 334, 337, 18 N.E.3d 426, 2014-Ohio-4097.  In this case, once the initiators obtained sufficient valid signatures on the petition papers and the Clerk certified the sufficiency of those signatures, Cleveland City Council was constitutionally mandated to submit the proposed charter

8

amendment to the Board of Elections to have it placed on the ballot. Pursuant to the requirements of the State of Ohio Constitution and the Cleveland City Charter, the City Council had no discretion to refuse to place the issue on the ballot. As such, adoption of a charter amendment that nullified any value to Plaintiff's services was indisputably beyond the control of the legislative power of the City of Cleveland. Given that the Charter Amendment was an unforeseen event beyond the control of the City of Cleveland that prevents the contract from being performed, it constitutes a force majeure event. Therefore, City of Cleveland cannot be held liable and its Motion for Summary Judgment should be granted.

### C. City of Cleveland's Performance was Excused under the Doctrines of Impossibility, Impracticability, and Frustration of Purpose

The City of Cleveland has asserted the affirmative defenses of Impossibility, Impracticability and Frustration of Purpose. *Second Amended Answer*, ECF 17, Page ID# 226. "Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties." *MTH Real Estate, L.L.C. v. Hotel Innovations*, 2nd Dist. Montgomery No. 21729, 2007 WL 2821135 at ¶ 19 (Sept. 28, 2007). As previously discussed, at the time the contract was made, the City did not foresee that residents would petition to amend the City Charter by adding substantial restrictions to the traffic camera program. The Charter Amendment, as passed by voters, states:

> The City, including its various Boards, agencies and department, shall not use any traffic law photo-monitoring device for the enforcement of a qualified traffic law violation, unless a law enforcement officer is present at the location of the device and personally issues the ticket to the alleged violator at the time and location of the violation. Cleveland Charter § 203, attached as Exhibit B.

These new restrictions make performance of the contract impossible for multiple reasons. First, the new restrictions require a police officer to be present at the location of the traffic camera,

9

personally witness the violation, and issue a ticket on scene. However, there is no way for a police officer to actually use the traffic camera for on-scene traffic enforcement. Jones Dep., ECF 19, Page ID# 385-386, 21:20-22:10. Since the cameras are completely automated, an officer could not interface with it. When the cameras detect a violation, that information is captured by Xerox's computer system and transmitted to Xerox's offices for processing. The cameras do not have the capability to immediately alert an officer on-scene of a traffic violation, nor could they inform the officer of which driver committed the violation. Jones Dep., ECF 19 at Page ID# 385-386, 21:20-22:10 and ID# 419-420, 55:15-56:20. Second, the contract requires Xerox, through its equipment and technology, to identify violators from the captured images and to mail out citations. LSA Chapter 2.5.2-2.5.5, ECF 4-1, PageID# 73-74. However, under the new restrictions, the officer is required to write the citation on scene at the time of the violation. As such, this integral component of the contract requiring Xerox to process citations violates the new Charter provision, making the contract illegal. Because courts will not enforce an agreement to perform an illegal act, it is impossible for this contract to be performed and the City should not be held liable for the alleged breach. *Glickman v. Coakley*, 22 Ohio App.3d 49, 52, 488 N.E.2d 906 (8th Dist. 1984).

The City has also asserted the affirmative defense of Impracticability. Generally, "a party asserting the defense of commercial impracticability must prove that an unforeseeable event occurred, that the non-occurrence of the event was a basic assumption underlying the agreement, and that the event rendered performance impracticable." *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 149 (N.D. Ohio 1989). By agreement, the contract was designed to be revenue-neutral so that the program would pay for itself. LSA E1.1, ECF 4-1, Page ID# 90. If the City was forced to man police officers at every traffic camera twenty-four

hours a day, seven days a week, the program would cost an additional $18.3 million per year. Testimony of James Muhic, attached as Exhibit E and authenticated by the Declaration of Larry Jones, attached as Exhibit C. Obviously the City does not have unlimited resources, and such an additional expenditure would be a substantial financial burden. Given that the entire program was structured to be self-funding, it was unforeseeable that the City would end up in a situation where it would have to pay $18.3 million in additional costs just to have the program at all. The basic assumption of the agreement was that the City would not have to extend additional resources to operate a camera program that was in effect twenty-four hours a day, seven days a week. In order to avoid such additional costs, the program could no longer operate the same number of cameras around the clock, which is not what both parties bargained for. As such, the Charter Amendment resulted in the impracticability of continued performance of the photo enforcement program.

Similarly, the City's performance was also excused through the Doctrine of Frustration of Purpose. "Where, after a contract is made, a party's principle purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary." *LNB Bancorp, Inc. v. Osborne*, N.D. Ohio 1:09-CV-643, 2009 WL 936957 (April 3, 2009) citing *U.S. v. Ellis*, 470 F.3d 275, 284 (2006). Frustration of Purpose serves as a defense to an alleged breach of contract when the principle purpose of the contract has been frustrated. *Id.*

In this case, the principal purpose of the contract was for Xerox to provide traffic cameras and technology so that the entire program would be automated. Jones Declaration attached as Exhibit C; also see Jones Dep., ECF 19, Page ID# 419-420, 55:15-56:20. The reason it needed to

11

be automated was to promote traffic safety without having to reallocate police resources and manpower to accomplish that goal. *Id.* at ID# 419-420 and ID# 491, 127:23-25; also see Flask Dep., ECF 18, Page ID# 277-278, 49:10-50:6. Xerox's traffic cameras would detect violations, and then Xerox would identify the violators and mail out the citations. LSA Chapter 2.5.2-2.5.5, ECF 4-1, PageID# 73-74. However, under the Charter Amendment, this process can no longer occur because it requires a police officer to personally witness the violation and issue the ticket on scene as it occurs. Cleveland Charter § 203, attached as Exhibit B. As such, the City's automated traffic camera program can no longer be automated at all. When such a program is automated it is a "force multiplier" because it allows for additional traffic enforcement without having to hire more police officers or expend additional police resources. However, the Charter Amendment prevents the City from maintaining an automated photo enforcement program. Thus, the entire purpose of the contract was frustrated.

As discussed, the passage of the Charter Amendment rendered the City's performance of the contract impossible and impracticable. Also, the Charter Amendment frustrated the entire purpose of the contract. Therefore, the City's performance was excused and it did not breach the contract.

### D. The City is Not Barred from Raising the Above Defenses

The voter initiated Charter Amendment is not controlled by the principle set forth in *West Haven Sound Development Corp. v. West Haven*, where the court precluded the city from raising an impossibility or impracticability defense after a voter-initiated ordinance. 201 Conn. 305, 313, 514 A.2d 734, 739 (1986). However, *West Haven* is distinguishable from the facts at issue here.

12

*West Haven* is a Connecticut decision that dealt with a voter referendum to modify a land use plan previously adopted by the West Haven City Council. *Id.* at 307. When the referendum passed and West Haven sought to modify the original development plan, the redevelopment company brought a breach of contract action against the city. *Id.* at 736. The City of West Haven asserted that it had no control over the voters, that its performance was rendered impossible due to the restrictions in the new ordinance, and that it could not have refused to enact it. *Id.* at 313. The Supreme Court of Connecticut held, however, that West Haven could not successfully assert an impossibility or impracticability defense because the voter referendum creating a new ordinance constituted a "legislative enactment" of the municipality itself. *Id.* at 314. As simply stated by the court, "an ordinance is a legislative enactment." *Id.* The court held that the municipality could not avoid liability for its own legislative enactment. *Id.* at 315. As such, because it was a legislative enactment, the Connecticut Supreme Court held that the initiative was an act of the municipality.

Our case in Ohio, however, involves a charter amendment rather than the enactment of a new ordinance. "An amendment to the charter is not an ordinance or measure providing for the exercise of government." *State ex rel. Ebersole v. Powell*, 141 Ohio St.3d 17, 21 N.E.3d 274, 2014-Ohio 4283. This distinction is important because in Ohio a municipal corporation is a body politic and corporate which is authorized to exercise specific powers of legislation and regulation. *Davis*, 18 Ohio Dec. 313. As previously stated, under Cleveland's system of local government, legislative and regulatory power is delegated by the electors to the city council and executive and administrative power is delegated by the electors to the Mayor and the Mayor's appointees. The Ohio Supreme Court has held that a "body corporate and politic is a governmental body or public corporation having powers and duties of government." *Hamilton*

*Co. Bd. Of Mental Retardation v. Professionals Guild*, 46 Ohio St.3d 147, 150, 545 N.E.2d 1260 (1989) citing *Uricich v. Kolesar*, 132 Ohio St. 115, 118, 5 N.E.2d 335 (1936).

Cleveland's charter clearly distinguishes between legislative action through passage and repeal of ordinances, and the organic action of amending Cleveland's charter. A proposed ordinance may be passed by the city council or initiated by the electors by petition. Cleveland Charter § 33, § 49, attached as Exhibit B. Ordinances proposed by initiative petition are submitted to the city council and referred to the appropriate committee of the council. Cleveland Charter § 54, attached as Exhibit B. The city council may pass the legislation, reject it or amend it. Cleveland Charter § 55, attached as Exhibit B.

Conversely, under Cleveland's charter, the city council has no legislative authority to review or amend an initiated charter amendment. Cleveland City Council may take no subjective or voluntary action to reject or amend an initiated charter amendment. Once the initiators obtain sufficient valid signatures on the petition papers and the Clerk certifies the sufficiency of those signatures, the city council is required to "forthwith" submit the proposed charter amendment to the Board of Elections to have it placed on the ballot. Cleveland Charter § 200; *State ex rel. Commt. For Charter Amendment Petition v. Maple Heights*, 140 Ohio St.3d 334, 337, 18 N.E.3d 426, 2014-Ohio-4097. "If such proposed amendment is approved by a majority of the electors voting thereon it shall become a part of the Charter of the City at the time fixed in the amendment." Cleveland Charter § 200.

The legislative branch of the City has no discretionary authority regarding - or even contact with - the amendment, unlike an ordinance where the legislature can actually amend the proposal. Clearly, *West Haven* is distinguishable from the instant case. The Charter Amendment at issue here arises under Ohio law and was not a legislative enactment as the Connecticut court

14

found with the change in the land use plan in *West Haven*.  As such, it does not constitute an action of the municipal corporation itself and the adoption of the amendment cannot be imputed to the City to abnegate the quality of force majeure or the fact of its impracticability.

Just because the charter amendment is proposed and passed by the electors, it does not automatically by operation of law become an action of the municipal corporation.  Even the court in *West Haven* stated that "the municipality as an entity represents the interests of the inhabitants." *West Haven, 514 A.2d* at 739.  While a municipality represents the interests of the inhabitants through representative democracy, the actions of its inhabitants are not imputed to the municipality.  Likewise, Xerox cannot impute any intent to terminate the contract, or determine foreseeability, from the independent actions of the electors.

The United States Supreme Court shares this view.  In *Cuyahoga Falls v. Buckeye Community Hope Foundation*, the City of Cuyahoga Falls enacted an ordinance to authorize the construction of low income housing developments.  538 U.S. 188, 191-193, 23 S.Ct. 1389 (2003).  When the voters of Cuyahoga Falls filed a petition for a referendum vote to repeal that ordinance, the city submitted the issue to the voters pursuant to its charter.  *Id.*  While the petition was pending, Cuyahoga Falls refused to issue building permits to the developers who had purchased the land.  *Id.*  The developers then sued Cuyahoga Falls, claiming violations of the Equal Protection Clause and Fair Housing Act.  *Id.* at 193-194.  The developers argued that the petition to repeal the ordinance that authorized development of low-income housing was racially motivated.  *Id.*  While the District Court dismissed the case on summary judgment, the Sixth Circuit reversed, holding that the developers "had produced sufficient evidence to go to trial on the allegation that the City, by allowing the referendum petition to stay the implementation of the site plan, gave effect to the racial bias reflected in the public's opposition

of the project." *Id.* However, the United States Supreme Court reversed, holding that the equal protection claim against Cuyahoga Falls cannot be solely based on the purported racial animus of voters. *Id.* at 195-196. "By placing the referendum on the ballot, the City did not enact the referendum and therefore cannot be said to have given effect to voters' allegedly discriminatory motives for supporting the petition." *Id.* The United States Supreme Court refused to impute the action of the voters to the City of Cuyahoga Falls as a municipal corporation. When the City of Cleveland entered into the contract with Xerox, it did so as a municipal corporation, not as a collection of citizens or voters.

If Xerox's position that the acts of the voters constitute an act of the municipality were applied to the *Cuyahoga Falls* case, then the Supreme Court would not have reversed. Xerox argues that the voters and the municipality are one entity, but if that argument was supported by law, then the voters' alleged racial bias in *Cuyahoga Falls* should have been imputed to the municipality, even if there was no evidence of racial bias on the part of city officials, and the Equal Protection violation claim would have been meritorious.

Paramount in this case is that the passage of the charter amendment in Cleveland was outside of the scope and control of the legislative powers of the city council. The Ohio Constitution imposes a mandatory constitutional duty upon city councils to submit charter amendment initiatives to the voters forthwith. *Maple Heights*, 140 Ohio St. 334. In fact, if Cleveland had refused to place the proposed amendment on the ballot, the voters would have likely filed a petition for writ of mandamus to compel such action, just as the petitioners did in Maple Heights. Moreover, if voters can file suit against a municipality, then, logically, they cannot be the same legal entity. And if they are not the same legal entity, then the action of the voters to pass the charter amendment is not that of the municipal corporation.

### E.  The Contracts Clause Does Not Preclude City of Cleveland's Defenses

The Contracts Clause, Section 10, Article I, of the United States Constitution does not preclude the City of Cleveland from raising its force majeure and other defenses. Xerox may attempt to rely on *City of Middletown v. Ferguson*, 25 Ohio St.3d 71, 495 N.E.2d 380 (1986) to argue that the City should have fought the Charter Amendment because it violated the Contracts Clause and thus was void *ab initio*. However, *Middletown* has significant departures from the case herein.

In *Middletown v. Ferguson*, the citizens passed an ordinance by voter initiative that repealed the enacting legislation that permitted the government to enter into a contract for road improvements. *Id.*, 25 Ohio St. 3d at 74. The government moved the court to find that the ordinance was unconstitutional as it violated the Contracts Clause which prohibits the legislature from altering the municipal corporation's ability to enter into binding contracts. *Id.* There are two distinctions between *Middletown* and the case herein. First, the people of Cleveland amended the City Charter – they did not use their legislative power to pass an ordinance as did the people of Middletown. As described above, the passage of a charter amendment is not an exercise of legislative power.

Second, the primary thrust of the initiative ordinance in *Middletown* was to halt construction of road improvement by removing its financial support and repealing its enabling ordinances. *Id.*, 25 Ohio St.3d at 78. The citizens of Middletown by initiative ordinance expressly expunged the contract and therefore the affected party had no remedy to apply to the court for breach of contract. In this case, the voters of Cleveland amended the Charter to require police officers to issue the citations that the red-light cameras previously had issued. The Charter Amendment did not destroy the contract, nor did it even expressly prohibit it. This case is not controlled by *Middletown* because there was no use of legislative authority to impair the

17

actual contract.  The organic action of the voters of Cleveland was to restrict the way law enforcement issued citations.  As such, *Middletown* is clearly distinguishable from the case herein.

Even if the Court were to find that the contract was substantially burdened and that there was no differentiation from a charter amendment despite the contrasting factors of *Middletown*, Contract Clause claims are analyzed under a two-pronged test and both prongs must be satisfied for the legislation to be unconstitutional.  *United Automobile, Aerospace, Agricultural Implement Workers of America Int'l Union v. Fortuno*, 633 F.3d 37 (2011).  The first prong of the test is whether the state law has operated as a substantial impairment of a contractual relationship.  However, even animpairment to a contract may be constitutional if it is reasonable and necessary to serve an important public purpose.  *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25, 97 S.Ct. 1501 (1977).

Xerox has failed to plead or demonstrate that its right to contract with the City was violated through the Charter Amendment.  Further, Plaintiff has failed to plead or demonstrate that the Charter Amendment was unreasonable or unnecessary to promote governmental interest.  Xerox must so plead before they may claim that this amendment violated the Contracts Clause and that the City of Cleveland therefore should not have acted in response to the amendment as it would have been void *ab initio*.  *Fortuno* at 45.  The Charter Amendment does not impair the Contract Clause because the amendment did not lack of reasonableness or necessity to serve important purpose.  *Id*.  Although the City disagrees with the local Charter Amendment, there can be no question that it was reasonably adopted by the people and intended to serve an important public purpose.  As discussed above, the Amendment requires a police officer to observe the violation and issue the citation instead of relying on automatic camera enforcement.

The state has adopted similar provisions in Senate Bill 342 of the 130th General Assembly requiring the presence of law enforcement officers before a citation may be issued. The presence of law enforcement before the issuance of a citation was clearly intended by the people to be a reasonable and necessary means to protect against the perceived impingement of their due process rights.

Xerox is required to prove that this Charter Amendment was an unreasonable use of the people's power to amend the City Charter. *Fortuno* at 45. However, it is well settled that the amendment to a municipality's police power is a "reasonable and necessary" legislative action that is intended to serve an important public purpose. The Massachusetts Supreme Court found in 2014 that persons with a contractual right with the State for a gaming license did not suffer an unconstitutional taking when the voter initiative banned approval of gaming licenses and prohibited certain types of gambling. The court stated that "the possibility of abolition was one of the many risks that casino's slot parlors, and their investors took when they chose to apply for a license." *Abdow v. Atty. Gen.*, 468 Mass. 478, 492, 11 N.E.3d 574 (2014). Xerox took this same risk when it contracted with the City on matters pertaining to its police powers. A legislative body has the authority to alter its police powers – such as regulating gambling, or in this case, traffic laws – without giving deference to pre-existing contractual obligations. *Id.* 468 Mass. at 487. Courts have long held that legislators cannot bargain away the police power of the state, that is, "a legislature cannot curtail the power of its successors to make whatever laws they deem proper in matters within the scope of the police power." *Abdow v. Atty. Gen.*, 468 Mass. 478, 487-88, 11 N.E.3d 574, 582 (2014), citing *Stone v Mississippi,* 101 U.S. 814, 817, 819, 25 L.Ed. 1079 (1879). While in this case it was the Cleveland voters altering the enforcement of a police power, rather than the legislature, after years of automated camera enforcement, the

19

principle in *Abdow* still applies.    As such, the voters cannot bargain away the rights of succeeding generations to change the municipality's police power.

Xerox has not plead or proven that there was a substantial impairment to the contract or that the Amendment was unreasonable or unnecessary.   Thus, Xerox is barred from alleging that the City of Cleveland should have disregarded the Amendment and continued performing the contract.

## CONCLUSION

Based on the foregoing, the City of Cleveland could not foresee the voter initiative and Charter Amendment, which was not within the control of the municipal government.   As a result of this unforeseen Charter Amendment, the City is entitled to the force majeure defense. Furthermore, it is impossible and impracticable for the City to continue to perform under the contract as it can no longer be performed as the parties bargained.   Finally, the restrictions of the Charter Amendment completely frustrated the entire purpose of the contract.   Therefore, the City of Cleveland respectfully requests that this Honorable Court grants summary judgment in its favor on the Issue of Liability, and grants such other relief as may be appropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2016, a copy of the foregoing **Defendant City of Cleveland's Motion for Summary Judgment on the Issue of Liability** was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   Parties may access this filing through the Court's system.

By:   ____/s/ Connor Nathanson____
CONNOR P. NATHANSON (0085191)
Assistant Director of Law
City of Cleveland
601 Lakeside Ave., Room 106
Cleveland, Ohio 44114-1077
Ph: (216) 664-2680
Fax: (216) 664-2663
Email: cnathanson@city.cleveland.oh.us

ATTORNEY FOR DEFENDANT
CITY OF CLEVELAND